# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-00162-05-CR-W-FJG |
| | ) | |
| DELBERT ROBERSON, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Beth Phillips, United States Attorney, and Brent Venneman, Assistant United States Attorney, and the defendant, Delbert Roberson, represented by Phillip Gibson

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One of the Indictment charging him with a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 that is, conspiracy to distribute five (5) kilograms or more of a mixture or substance containing cocaine and fifty (50) grams or more of a mixture or substance containing cocaine base, and Counts Two, Three, and Four of the Indictment, each charging him with a violation of

21 U.S.C. §§ 841(a)(1) and (b)(1)(B) that is, distribution of five (5) grams or more of a mixture or substance containing cocaine base.

      **3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which he is pleading guilty are as follows:

      Defendant admits that between July 1, 2009, and June 19, 2010, he conspired with Shawn Hampton and others to distribute cocaine and cocaine base in the Western District of Missouri in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A).

      In July 2009, KCPD's Gang Squad and the Federal Bureau of Investigation (FBI) began investigating the cocaine trafficking activities of Hampton. Roberson admitted to law enforcement officers that he was an associate of Hampton's. Roberson was initially targeted in this investigation by law enforcement and he made several hand-to-hand sales of cocaine base to an undercover KCPD detective. As indicated in Counts Two, Three, and Four of the indictment, Roberson sold half-ounce quantities of cocaine base to an undercover detective on August 21, 25, and 28 of 2009 in Kansas City, Missouri.

      Through the interception of court-authorized wire and electronic communications of target telephones used by Hampton, investigators learned that Hampton purchased kilogram quantities of cocaine from Ricardo Nevarez, who was supplied by Alfonso Velo. This cocaine was then distributed to Hampton's associates, including the defendant, as cocaine or cocaine base. Hampton and his associates, including the defendant, would distribute cocaine base from various houses located in Kansas City neighborhoods. Investigators estimate that during the course of the wiretap investigation, which began on February 3, 2010, Hampton's organization was responsible for acquiring and distributing 35 - 40 kilograms of cocaine.

      The following two paragraphs are representative of the intercepted telephone calls related to the defendant that occurred over the course of the conspiracy:

> On February 21, 2010, at approximately 8:12 p.m. an outgoing telephone call was intercepted between Shawn Hampton and Delbert Roberson during which they argued about a a recent drug transaction between Roberson and the defendant, Gregory Young. During this call, Hampton was upset because Gregory Young aka "Chan" had complained to Hampton that Roberson had over charged him for an ounce of cocaine. Roberson said, "Yeah, I did do them for a rack a piece." (A rack is a reference to $1000 for one ounce of cocaine base.) Hampton said, "Cuz, I ain't sending anyone else to you...because you hitting them over the head and they calling me complaining about it." Hampton then added, "I did not know you was doing that, I did not know you were going to hit them like that cuz." He continued, "If I send somebody to you, they expect to get the same price that I give them man."

On March 28, 2010, at approximately 1:14 p.m., an incoming call was intercepted between Hampton and Roberson. During this call, Roberson told Hampton about an individual who is known to him as a source of supply for cocaine. Hampton asked Roberson, "What kind of look it got?" Roberson said, "Taking sixty-three on water and bringing it back on eighty-five." Hampton responded, "Okay we can do it, I don't have all of my cheese though," and added that he only had about "fourteen". Roberson responded, "I got fifteen on me right now." I believe that this call refers to Hampton discussing with Roberson the quality of cocaine that can be obtained from an alternate supplier since Ricardo NEVAREZ has not provided Hampton with sufficient quantities of cocaine. The statement,"taking sixty-three on water and bringing it back on eighty-five,"is believed to be a reference to the amount of cocaine base that can be produced from powder cocaine. Finally, I believe that the conversation regarding "fourteen" and "fifteen" are references to amounts of money that Hampton and Roberson intend to use to purchase cocaine.

On April 23, 2010, at 10:55 a.m., an outgoing telephone call was intercepted between Hampton and Roberson. During this call, Roberson and Hampton had a discussion about the availability of two kilograms of cocaine. Hampton advised Roberson, "Shit, he called." Roberson responded, "I'm, ready." Hampton asked Roberson, "What you got?" Roberson told him, "I just get me another half." Hampton continued, "Fuck cuz, fuck that. He told me, he told me he had two." Roberson told Hampton that he was trying to buy two "cushions" and needed money for that. Finally, Roberson told Hampton, "Shit, I'm, I mean, I'm ready, bro. I got, uh, let me count… about… I'll call you right back," Hampton responded, "Call me back."

Later on April 23, 2010, at 11:31 a.m., another incoming telephone call was intercepted between Roberson and Hampton. During this call, Hampton and Roberson discussed money to purchase cocaine from Ricardo Nevarez. Hampton asked, "What you, uh, what you come up with?" Roberson replied, "How much I got? I got nineteen," and then continued, "How much money… how much money you need?" Hampton told him, "Just bring it, man, 'cause he'll let me owe him."

Specifically, the defendant admits that during the court-authorized wiretaps on Shawn Hampton's telephones, between February 3, 2010, and June 19, 2010, approximately 400 drug-related telephone calls were intercepted between Hampton and the defendant. During these calls, the defendant and Hampton would discuss purchasing and distributing cocaine base. Based upon the intercepted drug calls and surveillance activity, investigators estimate that over the course of the court-authorized wiretaps, Roberson purchased at least 7 kilograms of cocaine from Hampton.

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

**5. Statutory Penalties.** The defendant understands that the government has filed a notice of a sentencing enhancement pursuant to Title 21, United States Code, Sections 841 and 851. The defendant further understands that the Government is seeking this enhancement for a felony drug conviction, namely, the conviction from January 28, 1999, when Roberson was convicted in the Circuit Court of Jackson County, Missouri, for possession of a controlled substance, Case Number CR97-05946.

The defendant understands that upon his plea of guilty to Count One of the Indictment charging him with conspiracy to distribute cocaine and cocaine base, pursuant to Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 851, the minimum penalty the Court may impose is not less than twenty (20) years of imprisonment, the maximum penalty the Court may impose is not more than life imprisonment, a fine not to exceed $8,000,000, at least ten years of supervised release, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony.

The defendant further understands that upon his pleas of guilty to Counts Two, Three, and Four of the Indictment, charging him with distribution of cocaine base, pursuant to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B) the minimum penalty the Court may impose is not less than five (5) years of imprisonment, the maximum penalty the Court may impose is not more than forty (40) years of imprisonment, a fine not to exceed $2,000,000, at least four years of supervised release, and a $100 mandatory special assessment, per count, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least eight years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    e. any sentence of imprisonment imposed by the Court will not allow for parole;

-5-

Case 4:10-cr-00162-FJG   Document 294   Filed 04/13/11   Page 5 of 16

  f. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

  g. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

  **7. <u>Government's Agreements.</u>** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the Indictment, for which it has venue and which arose out of the defendant's conduct described above.

  The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

  The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against

him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

      **8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

      **9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable

-7-

Case 4:10-cr-00162-FJG    Document 294    Filed 04/13/11    Page 7 of 16

Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

      **10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

      a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

      b. The applicable Guidelines Manual is the one that took effect on November 1, 2010;

      c. The parties agree that the amount of cocaine involved in this offense is not less than seven kilograms of cocaine and the base offense level under the revised U.S.S.G. 2D1.1 will apply.

      d. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

      e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

      f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

g. The United States agrees not to seek an upward departure from the Guidelines or a sentence outside the Guidelines range, and defendant agrees to not seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the parties to not seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

i. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to

void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.**  The defendant understands that the United States expressly reserves the right in this case to:

    a.  oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b.  comment on the evidence supporting the charges in the Indictment;

    c.  oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d.  oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.**  The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a.  the right to plead not guilty and to persist in a plea of not guilty;

    b.  the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c.  the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d.  the right to confront and cross-examine the witnesses who testify against him;

    e.  the right to compel or subpoena witnesses to appear on his behalf; and

    f.  the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

   b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16. <u>Financial Obligations</u>.**

By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged related criminal activity. This amount will include $5,700.00 payable to the Kansas City, Missouri, Police Department for a vehicle tracker that was removed and disposed of by the defendant.

    b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

    c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

    d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

    e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

    f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

    g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special

-12-

Case 4:10-cr-00162-FJG   Document 294   Filed 04/13/11   Page 12 of 16

Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

      h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

      i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

-13-

Case 4:10-cr-00162-FJG   Document 294   Filed 04/13/11   Page 13 of 16

**19. Application of Sentencing Enhancement.** In accordance with Title 21, United States Code, Sections 841 and 851, and the law of the Eighth Circuit, a sentencing enhancement has been filed in this case as a result of the defendant's prior felony drug conviction, that being possession of a controlled substance. In the event of a change in the law that would preclude application of this enhancement for such cases involving simple possession of controlled substance as a qualifying conviction, the parties agree that the defendant would be allowed to retroactively seek the benefit of any such change in the law.

**20. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the

Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

21. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

22. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                                          Beth Phillips
                                          United States Attorney

Dated: 03/28/2011                      */s/ Brent Venneman*

                                          Brent Venneman
                                          Assistant United States Attorney

     I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 03/28/2011                      */s/ Delbert Roberson*

                                          Delbert Roberson
                                          Defendant

     I am defendant Delbert Roberson's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Delbert Roberson's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 03/28/2011                      */s/ Phillip Gibson*

                                          Phillip Gibson
                                          Attorney for Defendant