# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cr-00162-05-FJG |
| ) | |
| DELBERT ROBERSON, ) | |
| Defendant. ) | |

## SENTENCING MEMORANDUM

COMES NOW Defendant and offers the following memorandum of fact and law in support of leniency at sentencing:

1. <u>Statutory range of punishment</u>: Count 1 carries a mandatory minimum sentence of ten years. Because the Government has filed a §851 motion, the sentence is enhanced to a mandatory minimum of twenty years. Because of the application of U.S.S.G. § 5K1.1 in this matter, the Court is free to fashion a sentence of incarceration for Defendant less than the statutory mandatory minimum.

2. <u>Advisory guideline range</u>: Defendant has objected to the applicability of the career offender guideline. That objection will be more fully developed herein. Although Defendant persists in that objection, Defendant acknowledges that if the career offender guideline is applicable, the PSR has correctly calculated the advisory guideline range at a base offense level of 34 and a criminal history

category of VI for a guideline range of 262 to 327 months, with the low end of that range being 22 months greater than the statutory mandatory minimum. If the career offender designation is inapplicable, the base offense level would be 26 with a criminal history category of IV for an advisory guideline range of 92 to 115 months.

3. <u>Application of the career offender guideline</u>: The PSR writer employs the modified categorical approach to interpretation of offenses qualifying for career offender designation. At issue in this case is an offense nominally designated as Burglary in the Second Degree under Missouri law. The writer says that it was a felony conviction and a crime of violence. The classical definition of a burglary is breaking and entering a dwelling for the purpose of committing a felony while inside. In reality, the crime now being used to justify the career offender label was more akin to petty shoplifting than burglary. The convenience store was not a dwelling. There was no breaking and entering involved. During business hours, the door to the business was open and Defendant and another took some items from the shelves with a value far less than the felony threshold level under Missouri law. Defendant believed that he pled guilty to a misdemeanor stealing charge and the sentence he received of just thirty days certainly appears to bear that out. However, careful review of the documents from the Jackson County Circuit Court makes it clear that Defendant received a felony conviction. But a

2

"crime of violence" or a "violent felony"? The modified categorical approach can lead to nonsensical results. Taking low value items from an open store is misdemeanor shoplifting at best and certainly not a crime of violence. The career offender tag should be inapplicable here because the mere title of the charge vastly overstates the criminal behavior of the Defendant.

4. <u>Factors relevant to 18 U.S.C. §3553</u>: The Court is required to fashion a sentence that is sufficient, but not greater than necessary, to carry out the traditional roles of sentencing as enumerated in Section 3553. Rather than commenting on each of those elements, Defendant will limit his focus on the first factor that the section requires the Court to consider--"the history and characteristics of the Defendant."

In order to give the Court an opportunity to know Delbert Roberson as more than just another defendant in a large conspiracy, his family, friends and co-workers have provided the Court with letters that speak to Defendant's character. Those letters are attached to this Memorandum as Exhibits A through G, inclusive. Taken as a whole the letters describe Delbert Roberson as kind, respectful, talented, hard-working, compassionate, a good friend, a good father, and a person that those who know him rely on for strength and support.

More than that, the letters describe the level of commitment each of the writers has to help Delbert be successful and law-abiding in the future. Three of

the letters describe businesses that he could work for immediately upon his release into the community: a Farmer's Insurance office, a hair salon (Roberson is a trained and skilled barber), and Grantham University where his fiancée works. In addition, Roberson has shared his "business plan" for mentoring young people with his friends and family and that concept has their support as well. Each letter describes that writer's individual relationship with Delbert; how he has been a part of the writer's life in the past, and will be in the future, when he can once again be a part of the free world. These people stand ready to assist this Court and the Probation and Parole office in making sure that Delbert's transition into the community is successful and crime-free.

The letters also touch on the events that contributed to the crimes that were committed. The PSR suggests that the illegal activities of the Defendant occurred between July of 2009 and June of 2010. The letters document that this was a time of extreme financial and health-related difficulties for Defendant. He was gainfully employed in a job that he liked and succeeded in. He was earning a good income as his tax records show. But in a very short period, the company down-sized and laid off Defendant, his mother became ill and in need of financial support, and his lack of funds led to defaults that eventually forced him to file a bankruptcy proceeding resulting in plan payments that he could not make. None of these events by themselves or in tandem justify criminal behavior and this

4

explanation is not being offered as an excuse or rationale. The point is that the letter writers have been able to identify the precipitating events in Roberson's past that preceded a change in his character and behavior. Armed with that knowledge, they stand ready to intervene and assist their friend and family member through the hard times that may come in the future.

Although Defendant has been detained pending trial for more than two years, neither of the two institutions where he has been housed have found him to be in violation of any of their rules. His institutional adjustment has been superb and he has earned the respect of his correctional officers. On a personal note, counsel would like for the Court to know that Delbert has been a model client and has served as a role model for other clients of this office housed in the same jails.

Additional proof of the strength of Defendant's character can be found in the history of this case. Defendant was confronted by police officers when he made controlled buys to an undercover officer. At that point, Defendant provided information to law enforcement that was helpful. Long before he was charged, Defendant assisted authorities learn about the scope of the operation and the identity of some of the significant players in it. At a certain point, law enforcement officers believed that Roberson had ceased to be helpful and cooperative to the investigation and he was arrested. The discovery in this case was unusual in that the attorney for every defendant in this conspiracy was given written proof that this

5

Defendant had been cooperative and a key player in this investigation. From the day the discovery was released, Defendant became vulnerable in detention and his family became vulnerable in the community. In spite of the peer pressure and threats and mistreatment, Defendant stayed the course and did everything asked of him by the United States Attorney's office to assist in the prosecution.

It's one thing to be helpful to the Government when you can remain anonymous for months while you are locked up with your co-defendants and just spring your testimony on them right before trial. It's quite another to have your cooperation detailed for every other defendant to consider for months while they are locked up with you, and while your family is exposed to the families of co-defendants "on the street." In spite of the hardships his cooperation cause him and his loved ones, Roberson didn't waiver or wilt. He stood prepared to tell the truth in open court, even though it put him at risk and even though it meant that he would have to assist in the prosecution of some of his closest childhood friends. In sum, it was extraordinary, and his courageous stance is a § 3553 factor that is worthy of the Court's consideration completely independent of whatever the Government might recommend pursuant to § 5K1.1.

5. <u>Sentencing Request</u>: It is awkward to make a request for a specific sentence in this case because of some of the language in the Plea Agreement. In the Agreement, the Defendant has promised to not seek a sentence lower than the

6

advisory guideline range just as the Government will refrain from seeking a sentence higher than the guideline range. However, that same document truthfully said that the Defendant had not provided substantial assistance to the Government at that time. It was within the contemplation of the parties that if the statutory mandatory minimum sentence threshold was eligible to be breached by operation of § 5K1.1, the Defendant would probably argue for a sentence that would very likely be below the guideline range. In addition, neither the Government nor the Defendant anticipated that the guideline range would be so negatively impacted by the career offender calculation. In any event, Defendant, while mindful of the prohibition in the Plea Agreement, is making an argument for sentencing below the guideline range. Counsel for Defendant, after discussing the matter with Government Counsel, does not believe that the Government will interpose an objection to the argument based upon the provisions of the Plea Agreement because of the unique circumstances of this case.

Since June of 2010, Defendant has been incarcerated on these charges. By the time of sentencing, he will have served 27 months of whatever sentence he might receive.

The people who have written to the Court have all expressed their desire to see Delbert restored to the community at the earliest opportunity. Of course, that's typical of all leniency letters submitted to this Court, but these writers have taken

7

the additional step of making positive preparations for Delbert's return to the community. They have helped him find three solid job opportunities. They have told the Court how they plan to help him in the future with his reintegration into the life of his church and his children's lives. Most importantly, these people have told the Court of the value of Delbert in their lives and how they will do whatever it takes to keep him in their lives and in their homes. For that reason, Defendant respectfully requests that whatever period of confinement he might be ordered to serve in excess of the twenty-seven months he has already served, he ordered to serve it in electronically-monitored home detention, at the expense of the Defendant, under the supervision of Probation and Parole. In this way, the innocent victims of Defendant's crimes, his wife-to-be and children, can benefit from his presence and financial support. He can resume gainful employment immediately and continue his rehabilitation in the community immediately. The savings to the U.S. Treasury would be substantial and all of the traditional sentencing goals as enumerated in Section 3553 can be met. In addition, Defendant and Defendant's family will be far safer with him in the community than in any federal prison. Emotions have run high as the final defendants have been sentenced in this case. As much as the Bureau of Prisons tries to prevent retaliation against cooperators, a person in the position of this Defendant is safer outside the Bureau of Prisons than in.

With respect to the length of his confinement, whether in electronically-monitored home detention or incarceration in a federal prison, Defendant respectfully requests that he be sentenced to a total of sixty (60) months. The number is not arbitrary or random. It represents the statutory mandatory minimum for the base offense of possessing narcotics with the intent to distribute. It is consistent with a standard substantial assistance downward departure in this jurisdiction based upon the ten year mandatory minimum for conspiracy to distribute narcotics. It is more than what the sentence would be with a standard substantial assistance downward departure in this jurisdiction based upon the guidelines in this case without the career offender enhancement.

6.  Conclusion: Between the summer of 2009 and the summer of 2010, Delbert Roberson committed serious crimes for which he is exceedingly remorseful. Counsel is confident that Delbert will clearly convey that sentiment to the Court during the sentencing hearing. Before that horrible year, Delbert was a man who had overcome adversity to become successful and respected in his community. He asks this Court to allow him to return to his community and continue his rehabilitation while being electronically monitored and under the watchful eyes of his support group and the Probation and Parole office for the next 23 months until he becomes eligible for supervised release.

Respectfully submitted,

//s// Phillip R. Gibson
Phillip R. Gibson, #28610
1200 N.W. South Outer Rd., Ste. 302
Blue Springs, MO 64015
816.29.8484 / 888.519.7259 fax
Phil0704@aol.com
*Counsel for Defendant*

CERTIFICATE OF SERVICE

  I hereby certify that on the 23rd day of August, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which sent notification of such filing to all counsel of record.

//s// Phillip R. Gibson
*Counsel for Defendant*
